871 So.2d 552 (2004)
STATE of Louisiana
v.
Joan M. WALLIS.
No. 03-KA-1415.
Court of Appeal of Louisiana, Fifth Circuit.
March 30, 2004.
Margaret S. Sollars, Louisiana Appellate Project, Thibodaux, LA, for Appellant.
Paul D. Connick, Jr., District Attorney, 24th Judicial District, Parish of Jefferson, State of Louisiana, Terry M. Boudreaux, Appellate Counsel, Thomas J. Butler, Counsel of Record on Appeal, Donald A. Rowan, Jr., Trial Counsel, Assistant District Attorneys, Gretna, LA, for Appellee.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY and CLARENCE E. McMANUS.
JAMES L. CANNELLA, Judge.
The Defendant, Joan Wallis, appeals from her conviction of theft of goods valued between $100 and $500 and her original *553 sentence to two years imprisonment at hard labor. For the reasons which follow we affirm her conviction. All issues relative to the appeal of her original sentence are moot.
On March 13, 2003, the Jefferson Parish District Attorney filed a bill of information charging the Defendant with theft of goods valued between $100 and $500, a violation of La. R.S. 14:67.10. The Defendant was arraigned on March 14, 2003 and pled not guilty.
The Defendant filed a motion to appoint a sanity commission on April 7, 2003. On May 21, 2003, defense counsel stipulated that the Defendant was competent to stand trial after speaking to the doctors and reviewing their report. Based on the stipulation, the trial court found the Defendant competent. Defense counsel subsequently asked the trial judge if she could do some further testing on the Defendant, which the trial court allowed.[1]
On July 22, 2003, the Defendant moved to change her plea to not guilty and not guilty by reason of insanity. The Defendant argued that the June 26, 2003 evaluation which she obtained from the State of Louisiana, Department of Health and Hospitals, Office for Citizens with Developmental Disabilities, showed that the Defendant had a low intelligence quotient (IQ) and mental problems. She further argued that the competency issue was entirely different from the issue of whether she could plead not guilty by reason of insanity. The trial judge found that the Defendant did not show good cause for the change of plea and dismissed her motion, but he allowed the Defendant to enter the evaluation into the record.
On that same date, the Defendant was tried before a six person jury and found guilty as charged. On August 22, 2003, the Defendant's motion for new trial and motion for reconsideration of sentence were denied, and her motion for appeal was granted. On that same date, the trial court sentenced the Defendant to imprisonment at hard labor for two years.[2] On November 14, 2003, the State filed a habitual offender bill of information, alleging the Defendant to be a fourth felony offender, which the Defendant denied.[3]

FACTS
Thomas Townsend (Townsend), the investigator for Mervyn's at Oakwood Shopping Center in Gretna, testified that, on *554 February 17, 2003 at 4:17 p.m., he observed on a video camera the Defendant and a man come into the store through the mall entrance. The man stayed with the Defendant for approximately five minutes and then walked into the mall.
The Defendant subsequently went to the Women's Accessories Department, selected a gel pack and put it underneath her jacket. She went upstairs to the Kids Department, pulled out an Old Navy bag, and put socks inside the bag. She then made her way to the Lingerie Department, took a bra out of a box, concealed it and put the empty box back on the shelf. She next took merchandise off of a hanger and placed it into her bag. The Defendant walked toward the pay phones near the Guest Services Desk where she stayed for approximately four minutes, and she then went to the bathroom. She subsequently exited Mervyn's through the mall entrance.
Townsend testified that he and another investigator stopped the Defendant in the mall at 4:47 p.m., approximately one-half hour after she had entered Mervyn's. They found on her person an Old Navy bag filled with Mervyn's merchandise for which she did not have a receipt. He identified State's Exhibit 1 as the merchandise that the Defendant concealed in her bag and he testified that the merchandise was valued at $233.40. He identified State's Exhibit 2 as the videotape of the Defendant taking merchandise, which corroborated his testimony, and it was played for the jury. Townsend further testified that at the time of the incident there were several cash registers in the store where the Defendant could have paid for the merchandise.
On cross-examination, Townsend noted that none of the items in the Defendant's bag fit the Defendant, that the store used the regular price, not the sales price, to calculate the value of the merchandise taken, that they did not include tax to calculate the value, and that some of the items were on sale for eighty percent off. He testified that the Defendant told him that she stole the merchandise to sell it, because she needed a place to live.
The Defendant testified that she was 43 years old, did not know what day it was, nor did she know the year or the President's name. She testified that she knew what it meant to tell the truth and that she read at a third grade level. The Defendant admitted that she had been convicted of theft 13 times over the past 13 years. She also admitted that she had been convicted of a misdemeanor of contributing to the delinquency of a minor on April 21, 1992.
The Defendant testified that on February 17, 2003, she was living with her sister in the Fischer Housing Project, along with her six nieces and her sister's husband or boyfriend.[4] The Defendant explained that her sister would lock her in and out of the apartment. She testified that she could not get anything to eat at the apartment, noting that her sister locked the freezer and the refrigerator and took the burners off the stove. The Defendant stated that, when she was locked out of the apartment, she would sleep on the stairway.
She testified that her sister forced her to pay money to live there, but that she did not have any money. In order to get money to pay rent, the Defendant admitted that she went to the store and stole what her sister needed. The Defendant testified that she thought she had to get *555 those items for her sister in order to have a place to live. She explained that her sister's boyfriend went with her to Mervyn's on February 17, 2003, but that he did not tell her to steal anything.
The Defendant testified that she heard voices in her head, and that they told her to do things, but that she did not always listen to them. She explained that she put paper in her ears to block out the voices. She thought that, if she did not get money for rent, her sister was going to put her out of the apartment. The Defendant said that the thought of being put out scared her and that she did not want to sleep under the tree anymore.
On cross-examination, the Defendant admitted that every time she stole previously, she knew it was wrong to steal, but she did it anyway. She also admitted that when she was convicted previously of theft, her sister did not tell her to steal. The Defendant testified that she did have jobs in the past and had earned money to pay for goods but was fired for falling asleep. After hearing the evidence, the jury found the Defendant guilty as charged. The Defendant assigns one error on appeal.

ASSIGNMENT OF ERROR NUMBER ONE
The Defendant argues that the trial court erred by not giving a jury charge, as requested, on the defense of justification, authorized by La. R.S. 14:18(6), which provides in pertinent part:
§ 18. Justification; general provisions
The fact that an offender's conduct is justifiable, although otherwise criminal, shall constitute a defense to prosecution for any crime based on that conduct. This defense of justification can be claimed under the following circumstances:
....
(6) When any crime, except murder, is committed through the compulsion of threats by another of death or great bodily harm, and the offender reasonably believes the person making the threats is present and would immediately carry out the threats if the crime were not committed[.]
The Defendant contends that her defense was based on her belief that she would not have a place to live and would be abused by her sister and her sister's boyfriend if she did not follow their instructions to steal the items from Mervyn's. She claims that her limited mental capacity and her inability to understand that other options may have been available to her led her to steal the items as she was directed. She argues that she was entitled to the jury instruction on justification because it was supported by the evidence in accordance with La.C.Cr.P. arts. 802 and 807.[5]
*556 Following closing arguments, defense counsel informed the court that she had proposed jury instructions regarding justification. The proposed jury instructions were as follows:
1. Justification 6.13
The defendant's conduct, otherwise criminal, is justified if the offense charged was committed through the compulsion of threats by another of death or great bodily harm and the defendant reasonably believed the person making the threat was present and would carry out the threats immediately if the defendant did not commit the crime.
Thus, if you find:
(1)that the defendant committed the offense charged because he (sic) was compelled by threats of death or great bodily harm; and
(2)that the defendant reasonably believed the person making the threat[s] was present and would carry out the threats immediately if the defendant did not commit the crime;
Then you must find the defendant not guilty.
2. JustificationBurden of Proof 6.16
If you find that the defendant has raised the defense that her conduct was justified, the state must prove that the defendant's conduct was not justified.
Remember, the state bears the burden of proving the guilt of the defendant beyond a reasonable doubt.
After reviewing the proposed jury instruction, the State objected to the charge, noting that there had been no evidence to suggest that the Defendant had been threatened by death or great bodily harm. Defense counsel responded that that was an issue of fact for the jury to decide, that she had made a prima facie case that the Defendant was concerned for her welfare, that the Defendant's sister's boyfriend had been there at the store with her, and that the Defendant was afraid. The State countered that the boyfriend could have been called as a witness to support the defense argument but was not. Following arguments of counsel, the trial court, without providing reasons, refused to give the charge.
Under La.C.Cr.P. arts. 802 and 807, the trial judge is required to instruct the jury on any defense which is arguably supported by the evidence, whether or not it is accepted by him as true. State v. Miller, 338 So.2d 678 (La.1976). A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. La.C.Cr.P. art. 807. However, the jurisprudence also provides that when a defendant's theory of defense is not supported by the evidence, a charge as to that defense shall not be given to the jury. State v. Buchanan, 95-0625 (La.App. 1st Cir.5/10/96), 673 So.2d 663, writs denied, 96-1411 (La.12/6/96), 684 So.2d 923.
The Defendant relies on the Fourth Circuit decision in State v. Jackson, 97-2220 (La.App. 4th Cir.5/12/99), 733 So.2d 736, wherein the defendant was convicted of attempted perjury. On appeal, she contended that her trial counsel was ineffective for failing to request that the jury be charged regarding the defense of justification under La. R.S. 14:18. In support of her argument, the defendant claimed that her own testimony, as well as her mother's, established that she had committed perjury only because her life and the lives *557 of her family members were being threatened.
The appellate court stated that there was no evidence that someone with an apparent ability to immediately carry out the alleged threats was present in the courtroom when the defendant testified. Nevertheless, the appellate court, quoting from State v. Recard, 97-754 (La.App. 3rd Cir.11/26/97), 704 So.2d 324, 328, writ denied, 97-3187 (La.5/1/98), 805 So.2d 200, found that the defendant could escape criminal liability if the jury believed that she acted "`under a duress of circumstances to protect life or limb or health in a reasonable manner and with no other acceptable choice.'" State v. Jackson, 733 So.2d at 742. The appellate court also stated that, "A failure to provide a jury instruction is prejudicial where, without the applicable charge, the jury is unable to understand that if the omitted conditions have been met, the defendant cannot be found guilty as charged."
The appellate court in Jackson concluded that a jury charge on the justification defense would have been appropriate and that defense counsel was ineffective for failing to request it. Therefore, the appellate court ordered a new trial. Id. at 743.
Here, contrary to Jackson, we find that the justification defense was not supported by the evidence. There was no evidence that the crime was committed because the Defendant was compelled by threats of death or great bodily harm. The Defendant admitted that the man who initially entered the store with her did not tell her to steal the items. Townsend testified that the man only stayed with her for a few minutes and then left prior to her stealing the items. The videotape of the Defendant at Mervyn's clearly shows that she was alone when she stole the items. The Defendant testified that she went to the store and stole items which her sister needed so that her sister would not lock her out of the house. However, on crossexamination, the Defendant testified that, when she was previously convicted of theft, her sister did not tell her to steal. Additionally, the Defendant admitted to thirteen prior convictions for theft. She also admitted that she had jobs in the past where she earned money and could pay for goods, however she was fired for falling asleep. Based on the record, we find that the trial court did not err in failing to give a justification charge to the jury. This assignment of error lacks merit.

ERROR PATENT DISCUSSION
The record was reviewed for errors patent according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990). The review reveals no errors patent that require corrective action.
While we note two errors with the sentence imposed, a discrepancy between the transcript and the commitment regarding whether the sentence is to be served concurrently with the sentence resulting from the probation revocation, and failure of the trial court to wait 24 hours between denial of the motion for new trial and imposition of sentence, we also note that the errors are moot because the original sentence was vacated when the Defendant was resentenced as a habitual offender.[6]State v. Hanson, 00-1168 (La.App. 5th Cir.12/13/00), 778 So.2d 43.
Accordingly, for the reasons stated above, we affirm the Defendant's conviction of theft of goods valued between $100 *558 and $500 and find that any issues as to the original sentence are moot.
CONVICTION AFFIRMED.
NOTES
[1] Defense counsel was not re-urging incompetency, requesting the appointment of another sanity commission, or requesting that the trial judge order another expert to evaluate the Defendant. She had just stipulated to competency. Rather, from later events, we note that this request was for the purpose of supporting her motion to change her plea.
[2] See Patent Error Review below regarding this sentence.
[3] The record containing the habitual offender bill proceedings was lodged in this court on January 16, 2004 as State v. Wallis, 04-KA-61. Under Rule 2-1.14 of the Uniform RulesCourts of Appeal, any record lodged in this Court may be used, without necessity of duplication, in any other case on appeal or on writ. State v. Bradley, 02-1130 (La.App. 5th Cir.3/11/03), 844 So.2d 115, 118. The 04-KA-61 record shows that a habitual offender bill hearing was held on December 18, 2003. At that hearing, the trial court found the Defendant to be a fourth felony offender, vacated the original sentence, and sentenced the Defendant to imprisonment at hard labor for ten years. The Defendant thereafter filed a motion to reconsider sentence and a motion for appeal. The motion for appeal was granted, but we note no ruling on the motion to reconsider sentence. In the appeal pertaining to the habitual offender bill proceedings, the Defendant argues that the enhanced sentence was excessive, because the trial judge failed to consider as mitigating circumstances that she had a low IQ and was mentally retarded. That matter is not before us in this appeal and will be handled separately.
[4] This individual is referred to alternately by the Defendant as her sister's boyfriend or husband. Defense counsel refers to him as boyfriend. For consistency, we will refer to him as boyfriend.
[5] Art. 802. General charge; scope

The court shall charge the jury:
(1) As to the law applicable to the case;
(2) That the jury is the judge of the law and of the facts on the question of guilt or innocence, but that it has the duty to accept and to apply the law as given by the court; and
(3) That the jury alone shall determine the weight and credibility of the evidence.
Art. 807. Special written charges
The State and the defendant shall have the right before argument to submit to the court special written charges for the jury. Such charges may be received by the court in its discretion after argument has begun. The party submitting the charges shall furnish a copy of the charges to the other party when the charges are submitted to the court.
A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is Included in the general charge or in another special charge to be given.
[6] Because the multiple offender proceedings were not final in time to be considered along with this appeal, that part of the Defendant's case will be considered in a separate appeal, if and when timely presented.